**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 21-cv-21536-COOKE/DAMIAN

EDNAMARIE HERNANDEZ,

     Plaintiff,

vs.

THE CITY OF HOMESTEAD, FLORIDA,
And GEORGE GRETSAS,

     Defendants.

_____/

**REPORT AND RECOMMENDATION**
**ON DEFENDANTS' JOINT MOTION TO DISMISS**
**SECOND AMENDED COMPLAINT WITH PREJUDICE [ECF NO. 45]**

THIS CAUSE is before the Court on Defendants, The City of Homestead, Florida (the "City") and George Gretsas's ("Gretsas") (collectively, "Defendants"), Joint Motion to Dismiss Second Amended Complaint With Prejudice, filed January 27, 2022 (the "Motion"). [ECF No. 45]. This matter was referred to the undersigned by the Honorable Marcia G. Cooke, United States District Judge, for a Report and Recommendation. [ECF No. 46]. *See* 28 U.S.C. § 636(b)(1)(B).

The undersigned has considered the Motion, the parties' memoranda in response and reply [ECF Nos. 52, 55], the pertinent portions of the record, and all relevant authorities and is otherwise fully advised in the premises. In the Motion, Defendants seek dismissal of all four Counts asserted in the Second Amended Complaint ("SAC") with prejudice. For the reasons that follow, the undersigned recommends the Motion be granted.

## I.     BACKGROUND

### A. Factual Allegations

The following background facts are taken from the Second Amended Complaint [ECF No. 42] and are accepted as true for purposes of ruling on the Motion. *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Plaintiff, Ednamarie Hernandez ("Plaintiff" or "Hernandez"), was employed by the City as an administrative assistant in the Internal Affairs Division ("IA") of the Homestead Police Department ("HPD") from March 2011 until 2018. *See* SAC at ¶¶ 21, 42. Defendant City of Homestead is a municipal corporation in Miami-Dade County, Florida. *Id.* at ¶ 17. Defendant George Gretsas was the City Manager of Homestead, Florida from November 22, 2010, to January 3, 2020. *Id.* ¶ 18. According to the SAC, Gretsas was the City's "final policy maker" in the area of personnel actions. *Id.* at ¶ 11.

When Plaintiff was transferred to the IA Division, after previously having worked as a Dispatcher for HPD, she had an excellent employment record. *Id.* at ¶ 21. Within weeks of her assignment to IA, Plaintiff was assigned the project of shredding decades-old IA disciplinary files which were past the retention date required by law. *Id.* at ¶ 23. She worked on the shredding project until she was directed to focus on other tasks, at which point she had only processed a portion of the files slated for destruction. *Id.* at ¶ 24.

In April 2011, a former police officer asserting legal claims against the HPD requested copies of all IA files that had been slated for destruction but not yet destroyed. *Id.* at ¶ 25. Plaintiff alleges that her superior ordered her to state that all files slated for destruction had already been destroyed, which was untrue. *Id.* She further alleges that approximately one year later, copies of the destruction records were publicly requested, and her immediate supervisor, Marie Kent ("Kent"), ordered her to create fake file destruction records indicating that all of the files subject to destruction, including Kent's, had been destroyed. *Id.* According to the

SAC, Kent and HPD Chief Rolle signed off on the destruction records knowing they were inaccurate and improperly backdated. *Id.* at ¶ 26.

### 1. Plaintiff's Protected Activities

Plaintiff alleges in the SAC that she engaged in at least three types of protected First Amendment activity:

First, Plaintiff alleges that in July 2013, she reported to Captain William Rea that she had created the faked file destruction records under Kent's direction with Chief Rolle's awareness. *Id.* at ¶ 32.

Second, in 2013 through 2018, Plaintiff testified several times, including in State Attorney's Office depositions, in a civil lawsuit, and in arbitration hearings, all regarding the file destruction issue. *See id.* at ¶¶ 27, 34-35, 86.  Plaintiff alleges that in her testimony she disclosed the information set out above, including the involvement of her superiors. *Id.* Prior to testifying, Plaintiff entered into an immunity agreement with the State which required that she testify truthfully. *Id.* at ¶¶ 30, 33.

Third, in October 2019, Plaintiff participated in a video with Captain Rea in which she discussed the backdated file destruction information and the involvement of superiors at the HPD. *Id.* at ¶¶ 36-37.  In the video, which was posted on YouTube and social media, she also discussed other conduct she alleged was occurring at HPD, including retaliation against her for her testimony and complaints. *Id.*

### 2. Defendants' Adverse Actions

Plaintiff alleges she was subjected to at least five types of retaliatory and adverse conduct by Defendants as a result of having engaged in the foregoing protected activity: (1) hostile work environment; (2) false and adverse information given to potential employers; (3)

3

secret investigation and disciplinary action maintained in her employment file; (4) creation of defamatory documents in public record; and (5) publication of the defamatory information to the Mayor.

First, Plaintiff alleges that immediately after she testified in the 2013 arbitration proceedings, she began to experience a progressively hostile work environment at the HPD, including "[n]umerous acts of hostile work environment by mid-level managers under the supervision and responsibility of Defendant Gretsas[.]" *Id.* at ¶ 38. Examples of acts causing the hostile work environment include the refusal by her supervisor to grant a reasonable accommodation after surgery and on other occasions, the refusal by Human Resources to investigate Plaintiff's complaints of hostile work environment, and a comment by a supervisor that Plaintiff perceived as threats. *Id.* at ¶¶ 39-41.

Second, Plaintiff alleges Defendants provided false and adverse information about Plaintiff to prospective employers causing her to lose employment opportunities. *Id.* at ¶¶ 42-45.

Third, Plaintiff alleges Defendants conducted a secret investigation and disciplinary action against her for misuse of confidential information and other charges. *Id.* at ¶¶ 47-49. Plaintiff avers she was never informed of or given the opportunity to defend herself in the investigation, yet her IA records and personnel file reflect the charges were "sustained." *Id.*

Fourth, Plaintiff alleges Defendant Gretsas maintained dossiers on "his perceived enemies, including a dossier on Plaintiff (the "City Dossier") with false, misleading, and defamatory information," which Gretsas "strategically deployed" to third parties in direct retaliation for Plaintiff's exercise of her First Amendment rights. *Id.* at ¶ 3. Plaintiff states that the City Dossier was not discovered until the summer of 2020. *Id.* In retaliation for Plaintiff's

4

whistleblowing and participation in the YouTube video described above, Plaintiff claims that Gretsas created a document as part of the City's Dossier entitled "Why Would She Lie." (The "WWSL"). *Id.* at ¶ 54. According to Plaintiff, the WWSL is drafted in the style of a criminal indictment broken down into 133 separate felony counts based on the document destruction controversy and accusing Plaintiff of being guilty of all counts. *Id.* Plaintiff is unaware of when the WWSL and the City Dossier were created, but she learned of them in 2020 and they remain part of the City's public records. *Id.* at ¶ 55.

Fifth, Plaintiff alleges that in December 2019, Gretsas published the WWSL and the City Dossier to the City's newly elected Mayor and also showed the Mayor a bound book which contained a false description of the events surrounding the document destruction controversy. *Id.* at ¶ 62.

According to Plaintiff, Defendants' adverse actions were "intended to retaliate against Plaintiff for exercising her free speech rights" (*id.* at ¶ 64), and, as the result of Defendants' conduct, she stopped engaging in protected activities, self-censored her public speech, and resigned from the HPD. *Id.* at ¶¶ 84, 85, 99, 100, 112, 128.

### B. Procedural Background

Plaintiff initially commenced an action based on the allegations in this lawsuit on February 4, 2021, when she, along with William Rea, Roy S. Shiver, Jr., James E. McDonough, and Vanessa Lynn McDonough, filed a Complaint against the City, Gretsas, Alexander Rolle, Tom Mead, and Ricky Rivera. Case No. 1:21-cv-20488-KMM at ECF No. 1 (the "Rea Case"). The defendants identified in the Rea Case Complaint moved to dismiss and sever the Complaint. Rea Case at ECF Nos. 15–16. The plaintiffs' claims were then

severed from the Rea Case, and Plaintiff filed the instant action on April 21, 2021, asserting claims against the City, Gretsas, and Alexander Rolle. [ECF No. 1].

On June 21, 2021, the City, Gretsas, and Rolle moved to dismiss the Complaint. [ECF No. 25]. The Court granted the motion in part and denied it in part, dismissing the Complaint without prejudice as an impermissible shotgun pleading. *See* [ECF No. 40]. On January 13, 2022, Plaintiff filed the operative Second Amended Complaint including only the City and Gretsas as defendants. [ECF No. 42]. In the SAC, Plaintiff asserts the following claims: violation of civil rights under 42 U.S.C. § 1983 against Gretsas based on hostile work environment, negative employment references and conducting secret investigation (Count 1); violation of civil rights under 42 U.S.C. § 1983 against Gretsas based on retaliatory publication (Counts 2 and 3); and violation of civil rights under 42 U.S.C. § 1983 against the City (Count 4). *See generally* SAC. On January 27, 2022, Defendants filed the Joint Motion to Dismiss now before the Court seeking to dismiss the SAC with prejudice. *See generally* Mot.

## II.      APPLICABLE LEGAL STANDARDS

### A.  Failure to State a Claim

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This pleading requirement serves to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a complaint that does not satisfy Rule 8's requirements for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

6

To survive a motion to dismiss, a complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 8 does not require detailed factual allegations, but "requires more than labels and conclusions . . . [and] a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555.

In considering Defendants' Motion to Dismiss, the Court views the SAC in the light most favorable to Plaintiff and accepts all of her well-pleaded allegations as true. *Ziyadat*, 3 F.4th at 1296. At this stage, the question for the Court is not whether Plaintiff will ultimately prevail but whether she is entitled to offer evidence to support her claims. *Twombly*, 550 U.S. at 563 n.8. Courts will not grant a Rule 12(b)(6) motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46) (alterations added).

### B.  First Amendment Retaliation Claims

Plaintiff's claims in the SAC are all asserted pursuant to Title 42, United States Code, Section 1983. Section 1983 itself creates no substantive rights. It merely creates a remedy for deprivations of federal constitutional and statutory rights. *See City of Hialeah v. Rojas*, 311 F.3d 1096, 1103 n.1 (11th Cir. 2002) (citing *Almand v. Dekalb County*, 103 F.3d 1510, 1512 (11th Cir. 1997)). In this case, the source of Plaintiff's substantive rights is the First Amendment's protection of free speech.  Each of Plaintiff's claims is based on alleged retaliatory conduct by Defendants after Plaintiff engaged in conduct protected by the First Amendment.

The First Amendment protects against "abridging the freedom of speech." U.S. Const. amend. I. "'[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions' for engaging in protected speech." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). "To state a [First Amendment] retaliation claim, . . . a plaintiff must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

"As to the second prong, 'a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights.'" *Thompson v. Hall*, 426 F. App'x 855, 859 (11th Cir. 2011) (per curiam) (quoting *Bennett*, 423 F.3d at 1254 (alteration adopted)). As to the third prong, "a plaintiff must establish a 'causal connection' between the government defendant's 'retaliatory animus' and the plaintiff's 'subsequent injury.'" *Nieves*, 139 S. Ct. at 1722 (quoting *Hartman*, 547 U.S. at 259). "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Id.* "Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Id.* (quoting *Hartman*, 547 U.S. at 260).

### C. Qualified Immunity

"Qualified immunity shelters government officials performing discretionary functions from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Corey*

*Airport Servs., Inc. v. Decosta*, 587 F.3d 1280, 1284-85 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." *St. George v. Pinellas Cnty*, 285 F.3d 1334, 1337 (11th Cir. 2002). Indeed, the Eleventh Circuit has stated that "[b]ecause qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation,' [quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)], questions of qualified immunity must be resolved 'at the earliest possible stage in litigation.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority. *Gonzalez*, 325 F.3d at 1234 (citing *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002)). "A government official acts within his or her discretionary authority if objective circumstances compel the conclusion that challenged actions occurred in the performance of the official's duties and within the scope of this authority." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1185 n.17 (11th Cir. 1994).

"Once the defendants have established that they were acting within their discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Gonzalez*, 325 F.3d at 1234 (citing *Vinyard*, 311 F.3d at 1346). On a motion to dismiss, "[t]o evaluate claims of qualified immunity, the Court considers whether (1) the plaintiff has alleged a violation of a constitutional right; and (2) whether the right was 'clearly established' at the time of the defendant's misconduct." *Rehberg v. Paulk*, 611 F.3d 828, 838-39 (11th Cir. 2010). A Plaintiff can demonstrate the right was clearly established in three ways:

> First, the plaintiffs may show that "a materially similar case has already been decided." *Mercado v. City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). Second, the plaintiffs can point to a "broader, clearly established principle [that] should control the novel facts [of the] situation." *Id.* (citing *Hope*, 536 U.S. at 741, 122 S. Ct. 2508). Finally, the conduct involved in the case may "so obviously violate[ ] th[e] constitution that prior case law is unnecessary." *Id.* (citing *Lee*, 284 F.3d at 1199). Under controlling law, the plaintiffs must carry their burden by looking to the law as interpreted at the time by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court.

*Terrell v. Smith*, 668 F.3d 1244, 1255 (11th Cir. 2012). "These two steps do not have to be analyzed sequentially; if the law was not clearly established, [the Court] need not decide if the Defendants actually violated the Plaintiff's rights." *Fils v. City of Aventura*, 647 F.3d 1272, 1287 (11th Cir. 2011) (citing *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009)).

## III.    DISCUSSION

Defendants seek dismissal of all four counts in the SAC with prejudice. The undersigned will address each count of the SAC in sequence and Defendants' challenges thereto. However, initially, the undersigned addresses Defendants' argument that all of Plaintiff's claims are barred by the statute of limitations.

### A.    Statute of Limitations

Section 1983 claims are governed by the forum state's residual personal injury statute of limitations, which in Florida is four years. *City of Hialeah*, 311 F.3d at 1103 n.2 (citing *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999)). Specifically, a plaintiff must commence a Section 1983 claim arising in Florida within four years of the allegedly unconstitutional or otherwise illegal act. *See Baker v. Gulf & Western Indus., Inc.,* 850 F.2d 1480, 1483 (11th Cir.1988). Defendants argue, therefore, that to the extent Plaintiff's claims are based on conduct that occurred prior to 2017, the claims are time-barred.

Plaintiff responds that the claims are not time-barred because her claims did not accrue until she knew about the City Dossier and the information on Gretsas's thumbdrive, which was not discovered until 2020.  She also argues that the delayed discovery and continuing tort doctrines tolled the applicable statute of limitations.

"Applying federal law, the statute of limitations for a civil rights action begins to run from the date that the cause of action accrues, which occurs when 'the plaintiff has a complete and present cause of action' and 'can file suit and obtain relief.'" *Villalona v. Holiday Inn Express & Suites*, 824 F. App'x 942, 946 (11th Cir. 2020) (quoting *Wallace v. Kato*, 549 U.S. 384, 388, (2007)). In *Villalona*, the Eleventh Circuit explained that a Section 1983 cause of action will not accrue until the plaintiff knows or should know (1) that she has suffered an injury that forms the basis of her action and (2) the identity of the person or entity that inflicted the injury. *See also Mullinax v. McElhenney*, 817 F.2d 711, 716-17 (11th Cir. 1987).  Accepting the allegations in the SAC as true, it appears Plaintiff decided to leave her employment in 2018 based on what she describes as a "hostile work environment" and that she learned of much of the conduct she believes is actionable in 2020. While some of the conduct alleged in Count 1 occurred prior to 2017, that conduct is part of Plaintiff's hostile work environment claim, which Plaintiff presents as ongoing conduct that, arguably, culminated in her resignation in 2018.

Therefore, based on the allegations in the SAC, it appears Plaintiff's claims likely did not accrue before 2018. As such, the claims are not time-barred.[1]

---

[1] As discussed below, some of Plaintiff's claims are improperly intertwined with others in the same counts, and it is possible that if the claims had been pled separately, some may be found to have accrued earlier. Since the claims cannot survive dismissal pursuant to Rule 12(b)(6), it is unnecessary to delve into such a detailed analysis of the statute of limitations issue.

**B.    Count 1: Violation of Plaintiff's Civil Rights By Gretsas For Creating And Permitting A Hostile Work Environment, Providing Negative Employment References, And Conducting An Undisclosed Investigation Of Plaintiff**

In Count 1, Plaintiff alleges Gretsas violated her civil rights by retaliating against her for exercising her First Amendment rights. According to the SAC, the retaliatory conduct included creating and permitting a hostile work environment, providing negative information to prospective employers, and conducting an undisclosed investigation of Plaintiff. Gretsas first argues Count 1 should be dismissed as an impermissible shotgun pleading because it intertwines three distinct legal theories in a single count. Gretsas also argues the following bases for dismissal of Count 1: Plaintiff fails to present a legal basis for hostile work environment or negative employment references as a basis for a First Amendment retaliation claim; Plaintiff fails to allege sufficient facts to support her retaliation claims; he cannot be held liable for a Section 1983 claim solely on the basis of respondeat superior; and, he is entitled to qualified immunity. *See* Mot. at 6-7.

The undersigned will address each of Gretsas's challenges to Count 1 in turn. Notably, Gretsas's qualified immunity challenge requires the Court to address each of Plaintiff's claims to determine whether Plaintiff alleges violations of clearly established rights. Therefore, the undersigned addresses qualified immunity after addressing the sufficiency of Plaintiff's allegations against Gretsas.

### 1.    Shotgun Pleading

Gretsas argues that Plaintiff impermissibly commingles three adverse employment action theories into one claim, making Count 1 a shotgun pleading. Mot. at 6. Plaintiff responds that Count 1 is not a shotgun pleading because it is based on one theory, retaliation, and lists the various forms of retaliatory conduct to which she was subjected. Resp. at 7.

A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). "If doing so would promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence . . . be stated in a separate count . . . ." *Id.* The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[] his adversary can discern what he is claiming and frame a responsive pleading." *Weiland*, 792 F.3d at 1320 (quoting *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1544 n.14 (11th Cir. 1985) (Tjoflat, J., dissenting)). These rules were also written for the benefit of the court, which must be able to determine "which facts support which claims," "whether the plaintiff has stated any claims upon which relief can be granted," and whether evidence introduced at trial is relevant. *Id.*

The Eleventh Circuit has identified four general categories of shotgun pleadings: (1) a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint; (2) a complaint that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint that does not separate "each cause of action or claim for relief" into a different count; and, (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or

omissions, or which of the defendants the claim is brought against." *Barmapov v. Amuial*, 986 F.3d 1321, 1324-25 (11th Cir. 2021).

Count 1 of Plaintiff's SAC predominantly falls into the third category of shotgun pleadings as it alleges civil rights violations based on three separate adverse employment actions that will be proven based on different facts. That is, proof of the alleged hostile work environment will require different facts and evidence from proof of the claim based on giving negative employment references, which is different still from engaging in an undisclosed retaliatory investigation. Each of these bases for a retaliation claim needs to be asserted in separate counts which will be supported and proven by different facts. As presently pled, the task of determining whether the cause of action in Count 1 states a claim is onerous at best. Therefore, the undersigned recommends Count 1 be dismissed as a shotgun pleading.

That is, however, not the only issue warranting dismissal of Count 1. As explained above, to state a claim for First Amendment retaliation, a plaintiff must allege she suffered an adverse employment action as a direct result of exercising her First Amendment rights. In Count 1, Plaintiff avers she suffered three different types of adverse employment actions attributable to Gretsas: (1) hostile work environment; (2) negative employment references; and (3) a secret retaliatory investigation. In order to analyze whether Count 1 survives Rule 12(b)(6) dismissal, the Court addresses each of the bases asserted by Plaintiff as retaliatory actions to determine whether they are, as alleged, adverse employment actions that serve as valid bases for her First Amendment retaliation claim. The Court notes that for purposes of the Motion, Gretsas does not challenge that Plaintiff sufficiently alleges that she engaged in protected speech. He does contend, however, that Plaintiff fails to sufficiently allege facts to

meet the requirement that an adverse employment action was taken against her as the result of her having engaged in the protected conduct.

### 2. *Plaintiff's Section 1983 Claim Based On Hostile Work Environment*

The first theory Plaintiff asserts as a basis for her First Amendment retaliation claim against Gretsas in Count 1 is retaliatory hostile work environment. The SAC asserts that Gretsas exposed her to a hostile work environment that led to her injury and termination in retaliation for having engaged in speech critical of the HPD and the City. SAC at 15-17.

Gretsas argues Plaintiff fails to present a legal basis for hostile work environment to serve as an adverse employment action in a First Amendment retaliation claim. Mot. at 6. He also argues that Plaintiff has not pled sufficient facts to support a hostile work environment claim. *Id.* at 6-7. Plaintiff responds that she does not need to allege the elements of a hostile work environment claim and that the SAC presents sufficient facts to demonstrate an adverse employment action and causation. Resp. at 8-9.

Initially, the undersigned agrees that Plaintiff has not supplied any legal basis supporting a theory of hostile work environment as an adverse employment action necessary to plead a First Amendment retaliation claim. The undersigned is unaware of such authority in the Eleventh Circuit or any other circuit, and Plaintiff offers none. In any event, Plaintiff's allegations of hostile work environment are insufficient to demonstrate the requisite adverse employment action taken against her to support her First Amendment retaliation claim.

Although there have been discrepancies[2] among decisions from the Eleventh Circuit regarding the standard to apply when determining whether an adverse employment action

---

[2] In *Bell*, the Eleventh Circuit explained its "muddled" precedents on the adverse action standard:

has been demonstrated, the Eleventh Circuit consistently holds that for an action to be "adverse" in the retaliation context, it "must be harmful to the point that [it] could well dissuade a reasonable worker" from engaging in the protected activity. *Bell v. Sheriff of Broward Cty.*, 6 F.4th 1374, 1377-78 (11th Cir. 2021) (citing *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). The Eleventh Circtuit also consistently describes an "adverse

---

In 2004, we held that a "public employer retaliates [in violation of the First Amendment] when [it] takes an adverse employment action that is likely to chill the exercise of constitutionally protected speech." *Stavropoulos v. Firestone*, 361 F.3d 610, 618 (11th Cir. 2004), *abrogated as to Title VII standard by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006).

A year later, in 2005, we addressed the adverse action standard for First Amendment retaliation claims brought by private citizens. Adopting the view of the majority of the circuits, we held that the standard is an objective one: "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005) (internal quotation marks and citation omitted). In so doing, we distinguished *Stavropoulos*: "The defendants' reliance on retaliation cases in the public employment context is misplaced, because different interests are at stake there. In the employment context, the required adverse action is 'adverse employment action.' Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers." *Id.* at 1252 (quoting *Stavropoulos*, 361 F.3d at 616). *See also Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (applying *Bennett* to First Amendment retaliation claim by prisoner).

So far, so good. But in a 2016 case involving the First Amendment retaliation claim of a police officer, we applied *Bennett* without mentioning *Stavropoulos. See Bailey v. Wheeler*, 843 F.3d 473, 477, 480-81 (11th Cir. 2016). Deputy Bell does not rely on *Bennett* or *Wheeler* by name, but he asks us to apply the adverse action standard enunciated in those decisions and in *Burlington Northern*, 548 U.S. at 68, a Title VII retaliation case. If we saw no way out of the precedential conundrum, we would have to apply *Stavropoulos* as the earlier decision, *see Corley v. Long-Lewis, Inc.*, 965 F.3d 1222, 1231 (11th Cir. 2020), unless we concluded that it has been abrogated by *Burlington Northern*.

6 F.4th at 1377-78.

employment action," as an action that "involve[s] an important condition of employment. *Stavropoulos v. Firestone*, 361 F.3d 610, 618-19 (11th Cir. 2004), *abrogated as to Title VII standard by Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68 (listing as examples discharges, demotions, refusals to hire or promote, and reprimands); *see also Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300-02 (11th Cir. 2005) (applying *Stavropoulos* and holding that constructive discharge is an adverse employment action but that reprimands, negative evaluations, threats of job loss and suspensions without pay, exclusions from meetings, and removal of job duties—even in the aggregate—are not).

Thus, in evaluating the adverse actions alleged by Plaintiff, the undersigned applies the objective test of whether the action would dissuade a reasonable employee from engaging in the protected activity and adheres to the additional consideration that the alleged adverse action should involve an important aspect of Plaintiff's employment, as further elaborated in the *Stavropoulos* and *Akins* decisions.

Plaintiff alleges the following conduct by Gretsas in support of her claim of a retaliatory hostile work environment:

> 1. "Defendant Gretsas retaliated against Plaintiff by instructing or knowingly permitting Mid-level management in the City to create an increasingly hostile work environment for Plaintiff Hernandez." SAC at ¶ 78.

> 2. "…Defendant Gretsas encouraged or knowingly allowed subordinates, such as officer Aquino, to intimidate Plaintiff as she prepared to testify to the facts of the records destruction scandal at HPD." *Id.* at ¶ 79.

Plaintiff also alleges that her supervisor refused to grant her reasonable accommodations when she requested them during her recovery from cancer surgery and on other occasions; that her human resources manager declined to look into her evidence of a hostile work

environment; and that her supervisor told her that people who testify against the HPD could "end up dead in the Everglades," which she perceived as a threat. *Id.* at ¶¶ 39-41.

The undersigned finds that these allegations are insufficient to establish, even at this preliminary stage of the litigation, that Gretsas took an adverse employment action against Plaintiff.

<u>Conclusory Allegations Of Hostile Work Environment</u>

First, Plaintiff's allegations that Gretsas caused or permitted her supervisors to create a hostile work environment are conclusory and are therefore insufficient by themselves to state a First Amendment retaliation claim. *See Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) ("[P]laintiffs must allege sufficient facts to support their § 1983 claims. Bare conclusions, even read in the light most favorable to plaintiff, may prove insufficient."). Even if a hostile work environment was actionable as retaliation in violation of the First Amendment, merely labeling conduct a "hostile work environment" does not make it such. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage."); *cf. Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 n.6 (11th Cir. 1998) (concluding that statements that a place of employment "'was a racially hostile environment' . . . were properly struck [from affidavits] as conclusory"); *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (concluding that affidavits "replete with conclusory allegations of . . . [a] hostile working environment" were properly rejected). Moreover, although Plaintiff claims she is not pursuing a claim of hostile work environment and, therefore, is not required to plead the elements of a hostile work environment claim, she has

18

labeled the conduct alleged to be an adverse employment action as a hostile work environment. Therefore, she must allege facts to support that allegation if it is to serve as a basis for a constitutional violation.

Plaintiff's broad claim of a "hostile work environment" therefore does not by itself constitute an adequate allegation that Gretsas either directly or indirectly took an adverse employment action against her. Furthermore, as further discussed below, the SAC lacks supporting factual allegations demonstrating a sufficiently hostile work environment to satisfy the requirements of a hostile work environment claim or a retaliatory adverse employment action.

<u>Alleged Threats And Intimidation</u>

In support of her hostile work environment allegation, Plaintiff vaguely alleges Gretsas permitted or encouraged her supervisors to intimidate her as she prepared to testify regarding the conduct at HPD, thus causing a hostile work environment. SAC at ¶¶ 38, 78. However, she cites only one example of such intimidation, referring to a statement her supervisor, Aquino, made that people who testify against the HPD could end up dead in the Everglades. SAC at ¶ 41. She claims she interpreted the one statement as a threat, but she gives no other examples of threats or intimidation to demonstrate a hostile work environment.

To demonstrate a hostile work environment, the alleged behavior must result in an environment "that a reasonable person would find hostile or abusive," and one which the victim "subjectively perceive[s] . . . to be abusive." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002). In evaluating the severity of conduct in the context of hostile work environment based on discrimination claims, courts consider the totality of the circumstances, including the frequency and severity of the conduct, whether the conduct is

physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee's job performance. *Id*. Instances of alleged harassment are considered cumulatively rather than in isolation. *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010).[3]

Even though Plaintiff's one example of a threatening statement by her supervisor could objectively be viewed as intimidating, the totality of the circumstances alleged is not sufficiently severe or pervasive to support a claim of hostile work environment as a result. *Compare McCann v. Tillman*, 526 F.3d 1370, 1378—79 (11th Cir. 2008) (a few instances of racially derogatory language over a period of two and one-half years were "too sporadic and isolated" to qualify as severe or pervasive) with *Miller*, 277 F.3d at 1276—77 (severe and pervasive conditions existed where co-workers called plaintiff racially offensive names three to four times per day). Therefore, the one instance of a threat cited by Plaintiff is not sufficient to support her claim that Gretsas caused a hostile work environment.

Importantly, although offered as part of Plaintiff's claim that she suffered a hostile work environment, the one instance of a threat is also not sufficient to satisfy the test for a retaliatory adverse action, which requires sufficient allegations to demonstrate that the alleged conduct would deter a person of ordinary firmness from exercising her rights under the First Amendment. *Bell*, 6 F.4th at 1377-78; *Echols v. Lawton*, 913 F.3d 1313, 1320 (11th Cir. 2019). Based on the allegations in the SAC, the remark, although troubling, is isolated, and there is no allegation that the statement was made in a threatening tone or manner. Perhaps most

---

[3] In the absence of authority for hostile work environment claims in the Section 1983 context, the undersigned finds cases assessing hostile work environment claims in the context of Title VII discrimination complaints to be informative.

telling is the fact that after the threatening statement was made to her, Plaintiff alleges she went ahead and testified truthfully nonetheless. SAC at ¶ 41.

<u>Human Resources Ignoring Plaintiff's Complaints And Failure To Accommodate</u>

Also in support of her hostile work environment claim, Plaintiff alleges that shortly after she testified in an arbitration hearing regarding the conduct at HPD, her supervisor failed to provide reasonable accommodations to her after surgery for cancer "and on other occasions." SAC at ¶¶ 39-40. She also claims that when she complained to a human resources manager regarding her allegedly hostile work environment, the manager declined to consider the evidence she presented. *Id*.

The undersigned finds that Plaintiff's allegations regarding the failure of supervisors to respond to requests for accommodations and to her complaints about the alleged hostile work environment, although troubling and possibly actionable through other avenues, do not establish that Gretsas caused a hostile work environment sufficient to demonstrate an adverse employment action against her. Most importantly, the allegations are vague, making it difficult to assess whether the conduct rises to the level of hostile work environment or an adverse employment action or when the conduct occurred in relation to when Plaintiff engaged in the numerous alleged incidences of protected activity.

As for the alleged failure to accommodate, the undersigned finds that the one allegation of a failure to make scheduling adjustments after surgery (and possibly on other unspecified occasions) was not conduct sufficiently pervasive or severe to rise to the level of a hostile work environment. Likewise, Plaintiff's vague allegation that human resources failed to act on her complaints shows only that Plaintiff was unable to get the response to her

complaints that she desired and did not affect an important condition of employment, as described in the *Stavropoulos* and *Akins* decisions discussed above.

Although "employer action short of discharge may violate an employee's First Amendment rights," failing to respond to an employee's complaints to that employee's satisfaction does not. *Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006) (finding employer's complaint that supervisors failed to respond to complaints about hostile work environment insufficient to support retaliatory First Amendment claim). Nor does it appear that a reasonable person in Plaintiff's position would view the isolated conduct described in the SAC as adverse or that it would dissuade a reasonable worker from exercising her First Amendment rights.

In sum, taking as true all of Plaintiff's allegations that she claims resulted in a hostile work environment, the undersigned finds that the allegations are insufficient to demonstrate an adverse employment action as a basis for a First Amendment retaliation claim.

### 3. *Plaintiff's Section 1983 Claim Based On Negative Employment References*

Plaintiff's next alleged adverse employment action by Gretsas in support of Count 1 of the SAC is that "[u]pon information and belief, [] prospective employers contacted the City of Homestead for references, and were provided false and adverse information about Plaintiff." SAC at ¶ 44. She further alleges that "[u]pon information and belief, Defendant Gretsas encouraged or knowingly allowed subordinates to harm Plaintiff's prospects with prospective employers…" *Id.* at ¶ 82. Plaintiff provides no further information about her belief that prospective employers were given false and adverse information about her other than that she was told she would be hired for one position but was ultimately not hired and that she did

not know why she was not hired for the positions until her Dossier was found on Gretsas's flash drives in 2020. *Id.* at ¶ 45.

Gretsas challenges this claim as vague and insufficiently pled. Mot. at 7. The undersigned agrees. Although a negative employment reference may qualify as an adverse employment action, a claim based on such an action must provide a "basis for the court to determine [the defendant] provided a negative reference to [the prospective employer], much less the contents of or intent behind any such reference." *Mitchell v. Mercedes-Benz U.S. Int'l, Inc.*, 637 F. App'x 535, 539-40 (11th Cir. 2015). In *Mitchell*, the Eleventh Circuit affirmed the district court's finding that an alleged negative employment reference was not actionable where the plaintiff failed to identify the contents of the allegedly negative reference. Likewise, in the SAC, Plaintiff does not indicate what the negative employment reference(s) consisted of nor who gave them. Other than Plaintiff's vague statement that "upon information and belief" Gretsas allowed subordinates to harm her employment prospects, Plaintiff does not allege why Gretsas should be liable for such conduct in the SAC, and she provides no further insight in response to the Motion.

The vague and unsupported allegations concerning negative employment references are supported by nothing more than Plaintiff's "information and belief." *See* SAC at ¶¶ 44, 82. As Gretsas points out, allegations based upon "information and belief" need not be accepted as true if there are no factual allegations to support them. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013). That is because "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).

Thus, to the extent Plaintiff's retaliation claim is based on negative employment references as the adverse employment action, the claim does not satisfy the basic pleading requirements of Rule 8.

### 4. Plaintiff's Section 1983 Claim Based On Undisclosed Investigation of Plaintiff

Plaintiff's final allegation of an adverse employment action in support of Count 1 is that Gretsas "order[ed] or permit[ted] subordinates to conduct an investigation against Plaintiff for employment policy violations without affording her due process, and then placing unproven and false adverse information against her related to employment policies in the public records of the City of Homestead." SAC at ¶ 81. As alleged in the SAC, an IA investigation was initiated against Plaintiff in 2013 based on her allegedly sending City documents using her personal email. *Id.* at ¶ 48. According to Plaintiff, the charges were "investigated with great zeal by City detectives, but the investigation report suddenly ends in 2017 without explanation or finding." *Id.* at ¶ 49. Plaintiff alleges she was never informed of the investigation nor given an opportunity to present her side and that the allegations are false. *Id.* at ¶¶ 52-53. Although Plaintiff provides details regarding what she eventually learned about the investigation, she concedes in the SAC that she was not aware of the allegedly retaliatory investigation until 2020, after she left the employ of HPD and after she claims she chilled her own speech.

Gretsas argues that retaliatory investigation is not a viable basis for a First Amendment retaliation claim. Mot. at 7. Plaintiff responds that the authorities relied on by Gretsas on this point are inapplicable because none involved "investigations that ended with a secret stain of a violation in an employment file[.]" Resp. at 8.

The Eleventh Circuit has explained that "[t]he initiation of a criminal investigation in and of itself does not implicate a federal constitutional right." *Rehberg v. Paulk*, 611 F.3d 828 at 837 n.24 (citing *United States v. Aibejeris*, 28 F.3d 97, 99 (11th Cir. 1994)). The court further explained, "No § 1983 liability can attach merely because the government initiated a criminal investigation." *Id.* "The Supreme Court has never defined retaliatory investigation, standing alone, as a constitutional tort, and neither has [the Eleventh Circuit]." *Thompson*, 426 F. App'x at 858 (quoting *Rehberg*, 611 F.3d at 850) (internal quotation marks omitted)). Thus, a claim of a retaliatory investigation itself will not support a Section 1983 cause of action.

Moreover, viewing the allegations in the SAC as true, the undersigned finds that the allegations regarding the undisclosed investigation do not demonstrate a retaliatory adverse action. *See* SAC at ¶ 49. As an initial matter, the investigation and any resulting investigative report cannot serve as a basis for retaliation for any protected activity that occurred thereafter. *See Debe v. State Farm Mut. Auto. Ins. Co.*, 860 F. App'x 637, 640 (11th Cir. 2021) (per curiam) ("[I]f the alleged retaliatory conduct occurred before the employee engaged in protected activity, the two events cannot be causally connected."); *Tucker v. Fla. Dep't of Transp.*, 678 F. App'x 893, 896 (11th Cir. 2017) (per curiam) ("Logic dictates that the protected conduct must precede the act of retaliation.") (citation omitted). According to the SAC, the investigation began some time in 2013 and culminated in 2017. SAC at ¶ 49. Thus, the investigation cannot serve as a basis for a retaliation claim based on Plaintiff's protected activity that occurred in 2018 and 2019.

Moreover, the undersigned also finds that Plaintiff's allegations concerning the retaliatory investigation are not sufficient to support her First Amendment retaliation claim. *See Thompson*, 426 F. App'x at 858; *Rehberg*, 611 F.3d at 850. Beyond pure speculation,

25

Plaintiff has not identified facts demonstrating that the investigation, which she learned about after she left her employment with HPD, adversely affected material aspects of her employment. Indeed, while the investigation was allegedly under way and after it concluded, Plaintiff continued to engage in protected activity that she asserts as a basis for her claims. As such, Plaintiff's allegations regarding the undisclosed investigation are insufficient to demonstrate an adverse employment action.

For all of the foregoing reasons, whether the conduct alleged by Plaintiff in Count 1 is considered together or as individual actions, the undersigned finds that the allegations fail to adequately allege a claim for First Amendment retaliation under any of the theories offered.

### 5.   *Gretsas's Liability For The Actions Of Subordinates*

Gretsas also challenges Count 1 on the grounds he cannot be held personally liable for the actions of subordinates. Mot. at 7.

The standard by which a supervisor can be held personally liable for the actions of a subordinate is "extremely rigorous." *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). "Supervisory officials cannot be held liable under § 1983 for unconstitutional acts by their subordinates based on respondeat-superior or vicarious-liability principles." *Piazza v. Jefferson Cty.*, 923 F.3d 947, 957 (11th Cir. 2019). "Supervisors can be held personally liable when either (1) the supervisor personally participates in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation." *Mann*, 713 F.3d at 1308; *see also Piazza*, 923 F.3d at 957 ("[A]bsent allegations of personal participation . . . supervisory liability is permissible only if there is a causal connection between a supervisor's actions and the alleged constitutional violation.").

Thus, had Plaintiff sufficiently alleged claims of First Amendment retaliation in Count 1, in order to hold Gretsas personally liable for those claims based on the conduct of others (like the supervisors about whom Plaintiff complains in Count 1), Plaintiff must allege that Gretsas was personally involved in the alleged constitutional violations or that there is a causal connection between Gretsas's actions and the alleged constitutional violations.

In Count 1 of the SAC, Plaintiff alleges that Gretsas himself gave false negative information or encouraged and permitted subordinates to give false negative information about Plaintiff to prospective employers (¶ 80) and that Gretsas ordered or permitted subordinates to conduct an investigation against Plaintiff and then placed the unproven and false information against her in the public record (¶ 81). In addition, throughout her allegations concerning the conduct of others, Plaintiff alleges that Gretsas directed subordinates to engage in the challenged conduct.

Although the allegations in the SAC concerning Gretsas's conduct are not as pervasive as the conduct allegedly engaged in by his subordinates, it cannot be said that Plaintiff has not alleged Gretsas's personal participation in the alleged constitutional violations. The allegations of his direct participation border on conclusory as they lack factual support. Nonetheless, viewing the allegations in the SAC as true and in the light most favorable to Plaintiff, as the Court must do at this stage, the undersigned finds that Plaintiff has alleged that Gretsas personally participated in the constitutional violations alleged in Count 1, and, therefore, recommends that Gretsas's challenge on the grounds he cannot be held personally liable for those violations should be denied.

### 6.  *Qualified Immunity From The Claims In Count 1*

Finally, Gretsas argues Count 1 must be dismissed because he is entitled to qualified immunity from Plaintiff's claims of retaliation. The undersigned agrees.

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). To obtain a dismissal based on qualified immunity, "a government official must first establish that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred." *Id.* In this case, Plaintiff does not dispute that Gretsas was acting within his discretionary authority. Resp. at 20.

Therefore, the burden shifts to Plaintiff to overcome Gretsas's qualified immunity. *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017). To overcome qualified immunity, a plaintiff must "plead[] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735. As discussed above, the undersigned finds that Plaintiff has not pled sufficient facts to show that Gretsas violated her constitutional rights as alleged in Count 1. Therefore, she cannot overcome Gretsas's entitlement to qualified immunity for the claims alleged in Court 1. *See al-Kidd*, 563 U.S. at 735.

Even if she had sufficiently alleged constitutional violations in Count 1, the rights Plaintiff claims were violated were not clearly established when Gretsas allegedly violated them.

To defeat Gretsas's qualified immunity, Plaintiff must prove that Gretsas violated a constitutional right that "was 'clearly established' at the time of the challenged conduct."

*Plumhoff v. Rickard*, 572 U.S. 765 (2014). An official's conduct violates clearly established law when "the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635 (1987)). An official's conduct is considered in "the specific context of the case," not as "broad general proposition[s]." *Bailey*, 843 F.3d at 484; *see also al-Kidd*, 563 U.S. at 742 ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). The question at this stage is "whether the state of law at the time of [an official's conduct] provided 'fair warning,'" to every reasonable official that the conduct clearly violates the Constitution. *Echols v. Lawton*, 913 F.3d 1313, 1323-26 (11th Cir. 2019) (quoting *Mikko*, 857 F.3d at 1146).

Plaintiff can "demonstrate that the contours of the right were clearly established in one of three ways." *Loftus v. Clark-Moore*, 690 F.3d 1200, 1204 (11th Cir. 2012) (citation and internal quotation marks omitted). First, she can identify a "materially similar case [that] has already been decided." *Id.* (citation and quotation marks omitted). Second, she can identify "a broader, clearly established principle that should control the novel facts of the situation." *Id.* Third, she can show that "the conduct involved in the case may so obviously violate the [C]onstitution that prior case law is unnecessary." *Id.* at 1205. Plaintiff's arguments fail under all of these approaches.

Plaintiff only cites precedent regarding one type of conduct alleged in her SAC. That is, she contends that with the Eleventh Circuit's decision in *Echols v. Lawton*, 913 F.3d 1313, 1323-26 (11th Cir. 2019), "any doubt has been erased that in the 11th Circuit communicating false statements about a person in retaliation for that persons' [sic] exercise of First Amendment rights is also actionable under 42 U.S.C. § 1983." Resp. at 20. She then states,

that "Count III clearly alleges actionable conduct by Gretsas that postdates *Echols*." *Id.* Thus, Plaintiff does not argue that any of the violations alleged in Count 1 violate a clearly established right based on a materially similar case that has already been decided.

Instead, as to all but Count 3, she relies on the broader principle that it is clearly established that employers cannot retaliate against employees for exercising their First Amendment rights. Resp. at 21-22. However, as the court noted in *Echols*, "this general principle is too broadly stated to control our inquiry." The *Echols* court explained:

> "[S]ome broad statements of principle in case law [that] are not tied to particularized facts . . . can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002). But the principle must establish with "obvious clarity" that "in the light of pre-existing law the unlawfulness [of the official's conduct is] apparent." *Id.* at 1353. True, "it is 'settled law' that the government may not retaliate against citizens for the exercise of First Amendment rights." *Bennett*, 423 F.3d at 1256. But that general principle does not resolve with "obvious clarity" that defamation may constitute retaliation in violation of the First Amendment. *See also Reichle v. Howards*, 566 U.S. 658, 665 […] (2012) (rejecting the argument that "the general right to be free from retaliation for one's speech" clearly establishes a violation of the First Amendment).

Likewise, the general principle that the government may not retaliate against citizens for the exercise of First Amendment rights also does not resolve with "obvious clarity" that hostile work environment, giving negative information to prospective employers, or conducting an undisclosed investigation may constitute retaliation in violation of the First Amendment. To the contrary, as discussed above with regard to each of those categories of conduct alleged in Count 1, it is not at all clear that any of that conduct constitutes actionable retaliation in violation of the First Amendment.

Plaintiff offers no legal basis for hostile work environment as an adverse employment action sufficient to allege a First Amendment violation, and, as discussed above, the allegations in the SAC do not demonstrate a violation based on her allegations of hostile work

30

environment, much less a violation of a clearly established law. Nor does Plaintiff offer a legal basis to demonstrate with "obvious clarity" that giving negative information to prospective employers can be a constitutional violation. And as to conducting undisclosed investigations, there is actually precedent indicating that such conduct is *not* a basis for a constitutional violation under Section 1983.[4] There is no basis upon which it can be said that any of the conduct alleged in Count 1 demonstrates a violation of clearly established law.

Plaintiff also fails to demonstrate (or even argue) that Gretsas's conduct "so obviously violate[d] the [C]onstitution that prior case law is unnecessary." *Echols*, 913 F.3d at 1325 (quoting *Loftus*, 690 F.3d at 1205). As the Eleventh Circuit explained: "This narrow category encompasses those situations where the official's conduct lies so obviously at the very core of what the relevant constitutional provision prohibits that the unlawfulness of the conduct was readily apparent to the official, notwithstanding the lack of case law." *Id.* (internal quotation marks omitted) (quoting *Terrell v. Smith*, 668 F.3d 1244, 1257 (11th Cir. 2012)).

Plaintiff does not argue that Gretsas's conduct falls within this narrow category, and, given that the alleged conduct is not even so egregious as to amount to an adverse employment action at all, it is not clear that Gretsas's alleged conduct lies "so obviously" at the core of what the First Amendment prohibits. In other words, it would not have been

---

[4] The Eleventh Circuit has clearly held that conducting a clandestine investigation in retaliation for the exercise of free speech is not a violation of clearly established law in the context of a qualified immunity analysis. *Rehberg v. Paulk,* 611 F.3d 828, 850 (11th Cir. 2010). At least one other court in this District has applied the holding in *Rehberg* to cases based on the same or nearly the same allegations as those presented here to find that such conduct is not a violation of clearly established law in order to defeat a claim of qualified immunity. *See Shiver v. City of Homestead, Florida, et al*, Case No. 21-21537-CIV-Lenard (Order Oct. 4, 2021).

"readily apparent" to every reasonable official that Gretsas's alleged conduct violated the First Amendment. *See Echols*, 913 F.3d at 1325.

"When a plaintiff complains that a public official has violated the Constitution, qualified immunity shields the official from individual liability unless he had fair notice that his alleged conduct would violate 'the supreme Law of the Land.'" *Id*. (quoting the U.S. Const. Art. VI). Because Gretsas lacked that fair notice, he enjoys qualified immunity from Plaintiff's claims in Count 1 of the SAC.

For all of the above reasons, the undersigned recommends the Motion to Dismiss be granted as to Count 1.

### C. Counts 2 and 3: Violation of Plaintiff's Civil Rights By Gretsas For Retaliatory Publication Of False Or Misleading Information

In Count 2, Plaintiff alleges that Gretsas retaliated against her for exercising her First Amendment rights "by creating, or ordering or permitting his subordinates to create, a false criminal indictment against Plaintiff with the file name 'Why Would She Lie?'" and then placing the "false indictment document" in the Homestead public record, and showing the document to members of the City Council. SAC at ¶¶ 96, 97. In Count 3, she also alleges Gretsas retaliated against her for exercising her First Amendment rights "by publishing to newly elected Mayor Losner and/or others, the false and misleading information in Plaintiff's City Dossier in an effort to retaliate against, humiliate, intimidate, discredit, and harm Plaintiff" and that the false and misleading information included, among others, the Why Would She Lie? document. *Id.* at 110.

Gretsas argues the following bases for dismissal of Counts 2 and 3: Plaintiff fails to state a claim for defamation or for retaliation based on speech that amounts to a threat, coercion or intimidation; Plaintiff fails to sufficiently allege facts to demonstrate the alleged

conduct constituted an adverse employment action; Plaintiff fails to allege a causal link between the alleged conduct and Plaintiff's protected activities; and he is entitled to qualified immunity. *See generally* Mot.

In response, Plaintiff argues that Counts 2 and 3 do not assert state-law causes of action for defamation and that *Echols* does not require that she plead and prove a state-law cause of action for defamation within her First Amendment retaliation claim. Resp. at 4, 11. She further contends that the SAC does adequately allege the requisite threats and coercion and that it also demonstrates that the retaliatory conduct would chill a person of ordinary firmness from exercising their First Amendment rights. *Id.* at 12. Finally, Plaintiff argues the SAC demonstrates a causal connection between Plaintiff's exercise of her rights and Gretsas's retaliatory conduct. *Id.* at 15, 18, 19.

### 1.   *Whether Plaintiff Must State A Claim For Defamation*

Plaintiff argues that her claims are not defamation claims and that she is not required to plead and prove a state-law cause of action for defamation in setting forth her First Amendment retaliation claims in Counts 2 and 3. The undersigned agrees.

This precise issue was addressed in separate cases against William Rea and Roy Shiver based on the same or similar publications. *See Shiver v. City of Homestead et al.*, No. 21-21537-CIV-Lenard/Louis, 2021 WL 5174526, at *13-14 (S.D. Fla. Oct. 4, 2021); *Rea v. City of Homestead et al.*, No. 21-20488-CIV-Moore/Louis (S.D. Fla. Feb. 23, 2022). In *Shiver*, Judge Lenard explained that "'special concerns' arise where, as here, the alleged First Amendment retaliation consists of speech made by a public official[.]" *Shiver*, No. 21-21537-CIV-Lenard/Louis, 2021 WL 5174526, at *13-14 (citing *Dixon v. Burke Cnty.*, 303 F.3d 1271, 1275 (11th Cir. 2002)). Judge Lenard further pointed out that "at least eight federal circuit courts

of appeal require a plaintiff to show that a public official's allegedly retaliatory speech amounted to 'a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse regulatory action will imminently follow[.]'" *Id.* (quoting *Echols*, 913 F.3d at 1320 (citing *Suarez Corp. Industries v. McGraw*, 202 F.3d 676, 687 (collecting cases)); *Mirabella v. Villard*, 853 F.3d 641, 651 (3d Cir. 2017); *Mulligan v. Nichols*, 835 F.3d 983, 990 (9th Cir. 2016); *Goldstein v. Galvin*, 719 F.3d 16, 30 (1st Cir. 2013); *Hutchins v. Clarke*, 661 F.3d 947, 956 (7th Cir. 2011); *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 70 (2d Cir. 1999); *Colson v. Grohman*, 174 F.3d 498, 512 (5th Cir. 1999); *Penthouse Int'l, Ltd. v. Meese*, 939 F.2d 1011, 1015 (D.C. Cir. 1991)).

In *Echols*, the Eleventh Circuit explained that these circuits "have required that an official's retaliatory speech amount to a threat, coercion, or intimidation to reconcile two competing rights: a plaintiff's right to be free from retaliation for exercising his First Amendment rights and an official's right to engage in protected speech." 913 F.3d at 1320 (citing *Suarez Corp.*, 202 F.3d at 687 n.13). The district court in *Echols* applied this standard in determining that the state attorney was not liable for First Amendment retaliation. *Id.* On appeal, the Eleventh Circuit did not resolve whether this standard applies in this circuit because it agreed with the plaintiff that the state attorney's conduct constituted defamation under Georgia law, and defamation falls "outside the protection of the First Amendment." *Echols,* 913 F.3d at 1320 (citing *United States v. Alvarez*, 567 U.S. 709, 717 (2012)). The Eleventh Circuit found: "The First Amendment affords no protection to [the state attorney's] alleged libel of Echols, so no 'balance must be struck' here between the First Amendment rights of a plaintiff alleging retaliation for his speech and an official who allegedly retaliated through his own speech." *Id.* at 1322 (quoting *Suarez Corp.*, 202 F.3d at

687 n.13). "We must instead determine only whether [the state attorney's] alleged libel violated Echols's rights under the First Amendment." *Id*. The Eleventh Circuit then found that defamation is actionable as retaliation under the First Amendment, that the "ordinary firmness" test applies, and that "Lawton's alleged libel per se would have deterred a person of ordinary firmness from exercising his rights under the First Amendment." *Id*. at 1323.

Like Judge Lenard in *Shiver* and Judge Moore in *Rea*, the undersigned agrees that *Echols* does not require Plaintiff to plead the elements of a defamation claim in alleging a claim for First Amendment retaliation based on the publication of damaging or harmful information. The undersigned also agrees with the courts in *Shiver* and *Rea* that if she is not pleading the elements of defamation, then Plaintiff must show that Gretsas's allegedly retaliatory speech amounted to a "a threat, coercion, or intimidation intimating that punishment, sanctions, or adverse regulatory action will imminently follow." *Shiver*, No. 21-21537-CIV-Lenard/Louis, 2021 WL 5174526 at *14 (quoting *Echols*, 913 F.3d at 1320) "Given the overwhelming authority holding that this standard applies when a plaintiff is suing a public official for speaking, the Court finds that this standard applies to [a claim against Gretsas under 42 U.S.C. § 1983 for creating and publishing false or misleading information concerning the plaintiff]." *Id*. (collecting cases).

Thus, the undersigned next considers whether the SAC alleges sufficient facts to demonstrate that Gretsas's allegedly retaliatory speech amounted to a threat, coercion, or intimidation as required by *Echols*.

### 2. *Whether Plaintiff Sufficiently Alleges That Gretsas's Conduct Amounted To A Threat, Coercion, Or Intimidation*

Plaintiff argues that Gretsas's retaliatory communications "permit the inference, when read in the light most favorable to Plaintiff, that they were threatening, coercive or

intimidating while intimating imminent punishment." Resp. at 12. According to Plaintiff, showing others the "Why Would She Lie?" document in indictment format was "absolutely a threat of imminent but unfounded criminal prosecution," as the document suggested that Plaintiff's indictment was imminent. *Id.*

As a result, Plaintiff asserts that "[c]reating and publishing this fake indictment, with the knowledge that word would get back to Plaintiff, is akin to drawing a target over a person's photo or a rope around someone's neck." *Id.* Plaintiff also argues that Gretsas's conduct is separately actionable because the resulting injury was "embarrassing, humiliating, or emotionally distressful." *Id.* at 13 .

In reply, as to Count 2, Gretsas argues that Plaintiff's argument on this point is contradicted by the SAC, which states that Plaintiff was unaware of Gretsas's conduct for years. Reply at 3. And, Gretsas argues that the court in *Shiver* recently rejected the same arguments on this precise point. *Id.* (citing *Shiver*, No. 21-21537-CIV-Lenard/Louis, 2021 WL 5174526, at *14). As to Count 3, Gretsas again argues that Plaintiff's allegations fail because she was unaware of Gretsas's alleged retaliatory conduct until the summer of 2020, six months after the meeting between the newly elected Mayor and Gretsas. *Id.* at 7. Further, Gretsas contends that Plaintiff fails to allege a single act of imminent or adverse punishment or sanctions. *Id.*

The undersigned notes that Plaintiff's allegations in Count 2 are very similar to the plaintiff's allegations in the *Rea* Case, and the undersigned finds Judge Moore's analysis of the allegations in that case persuasive here. As to the conduct alleged in Count 2, which pertains to Gretsas's retaliatory publication of false or misleading information in response to Plaintiff's protected activities, the undersigned agrees that, like the allegations in the *Rea*

Complaint, the SAC suffers from timeline problems. Plaintiff alleges that, at some point in time, Gretsas directed the creation of a fake document in the style of a criminal indictment falsely demonstrating that Plaintiff was guilty of criminal conduct and that this report was made a part of Plaintiff's City Dossier. SAC at ¶ 54; *see also Rea*, Case No. 21-20488-CV-KMM (Omnibus Order, Feb. 23, 2022) at 13-14. The report contained the indictment-style document entitled "Why Would She Lie?". These documents allegedly remained in the public record after their creation. SAC at ¶ 56. Gretsas showed this information to local persons and others in City government. *Id.* at ¶¶ 56, 97. And, this was all done to retaliate against Plaintiff's exercise of her First Amendment rights in 2013 to 2019. *Id.*

The problem is that Plaintiff alleges Gretsas engaged in this conduct between at least 2013 up to 2019, when Gretsas showed it to the newly elected Mayor, but, according to the SAC, Plaintiff was not aware of this until 2020. *See id.* at ¶ 5. In her Response, Plaintiff states that she did not and could not know until 2020 what further retaliatory conduct Gretsas had engaged in beyond the hostile work environment she claims in Count 1. Resp. at 3-4.

Plaintiff allegedly did not know the injury she had suffered that forms the basis of the cause of action in Count 2, nor the identity of the person (Gretsas) causing the injury, until at least mid-2020. *Id.* She did not see the "Why Would She Lie?" document or the City Dossier until 2020. *Id.* Like the court in *Rea*, the undersigned also finds here that there is no basis to conclude that Gretsas's conduct amounted to a threat, coercion, or intimidation that punishment, sanctions, or adverse regulatory action will imminently follow when Plaintiff did not learn of Gretsas's conduct until years after that conduct ceased and where Plaintiff supplies the Court with the inference that she did not even know who the alleged perpetrator was until well after the conduct ceased. *See Rea*, No. 21-20488-CIV-Moore/Louis at 13-14.

As such, the allegations in Count 2 do not satisfy *Echols* and do not demonstrate a First Amendment violation.

The undersigned next turns to Count 3. In Count 3, Plaintiff alleges that, in December of 2019, Gretsas retaliated against Plaintiff by publishing to the newly elected Mayor Losner false information in Plaintiff's City Dossier because Mayor Losner had been asking questions at City Hall about the issues raised by Plaintiff. SAC at ¶¶ 61-63, 110. According to Plaintiff, Gretsas showed Mayor Losner portions of Plaintiff's City Dossier so that Mayor Losner would know "what really transpired," and because he knew it would get back to Plaintiff. *Id.* at ¶¶ 62-65. Notwithstanding the fact that the SAC does not indicate when Plaintiff learned that Mayor Losner had seen Plaintiff's City Dossier, or the fact that Plaintiff was not otherwise aware of the existence of the City Dossier until some point in 2020, the SAC fails to elucidate how Gretsas showing Mayor Losner Plaintiff's City Dossier amounted to a threat, coercion, or intimidation of Plaintiff. Moreover, the possible harms described in the SAC that allegedly resulted from the conduct in Count 3 are, generally, either reputational or otherwise vague. *See id.* at ¶¶ 110-112. And, as the court explains in *Rea*, "courts in this district have found that similar allegations do not rise to the level of threat, coercions or intimidation." *Rea*, No. 21-20488-CIV-Moore/Louis at 15 (citing *Shiver*, No. 21-21537-CIV-Lenard/Louis, 2021 WL 5174526, at *14 ("The most serious allegation contained in Count IV is that Gretsas 'provided all or parts of the Dossier to the Miami Herald who published the false and misleading information provided by Defendant Gretsas publicly damaging [p]laintiff's reputation.' That allegation simply does not meet the standard for stating a First Amendment retaliation claim against a public official.")).

Viewing the Plaintiff's allegations as true, the undersigned finds that Counts 2 and 3 of the SAC do not allege a violation of Plaintiff's constitutional rights and should therefore be dismissed.

### 3. *Qualified Immunity As To Counts 2 And 3*

Even if Counts 2 and 3 sufficiently alleged First Amendment violations, they should nevertheless be dismissed because Gretsas is entitled to qualified immunity.

Gretsas argues that he is entitled to qualified immunity as to Counts 2 and 3 because the right to be free from a government official's First Amendment retaliation in the form of publication of false, misleading or threatening speech was not a clearly established right prior to the Eleventh Circuit's January 25, 2019 decision in *Echols*; and with respect to any alleged conduct by Gretsas that occurred post-*Echols*, the *Echols* decision is not sufficiently analogous to provide a "fair and clear warning that Gretsas's conduct may constitute a violation of the First Amendment." Mot. at 19-21.

In her Response, Plaintiff argues that Gretsas is not entitled to qualified immunity as to Couns 2 and 3. Resp. at 19. Plaintiff argues that the proper standard is the one discussed in *Bennett* and *Bailey*, which recognize a broader, clearly established principle that government officials cannot retaliate against citizens for exercising their First Amendment rights. *Id*. at 20. She argues that *Echols*:

> does not establish a different standard for the circumstances of the instant case. The *Echols* court stressed that it had to look at the specific context of the case, and that given the facts of that case, the prosecutor was not on notice that his allegedly defamatory testimony to the Georgia legislature constituted a violation the First Amendment.

*Id*. Plaintiff further argues that the Court should not grant Gretsas qualified immunity because the affirmative defense is not unambiguously evident from the pleadings. (*Id.* at 20.)

In his Reply, Gretsas maintains that he is entitled to qualified immunity because his conduct did not violate a clearly established constitutional right. (Reply at 11 (citing *Rehberg*, 611 F.3d at 851; *Echols*, 913 F.3d at 1324-26).)

The undersigned finds that even assuming *arguendo* that Plaintiff has stated a First Amendment retaliation claim against Gretsas based on his alleged conduct in Counts 2 and 3, that right was not clearly established at the time of the alleged conduct. *Echols*, 913 F.3d at 1324-25. The conduct in *Echols* is not so analogous that Gretsas should have known based on that case that the alleged conduct was unconstitutional. In *Echols*, the plaintiff-appellant ("Echols") was convicted of kidnapping and rape and sentenced to fifteen years' imprisonment. *Id.* at 1318. After serving seven years of his sentence, DNA tests revealed that he had been wrongfully convicted, and the trial court vacated Echols's sentence and granted him a new trial. Later, the Georgia Claims Advisory Board recommended compensating Echols, and a Georgia state legislator introduced a bill to compensate him with $1.6 million for his wrongful convictions. *Id.* However, before the legislators voted on the bill, the State Attorney who had prosecuted Echols sent a letter and memorandum to several legislators telling them that Echols's convictions "were proper and fitting, even though [his] conviction[s] had been vacated" and that they should not presume Echols innocent of kidnapping and rape because the vacatur of his convictions did not establish his innocence. The State Attorney urged the legislators not to compensate Echols unless he proved his innocence and told the legislators that Echols remained under indictment for kidnapping and rape even though the indictment had been dismissed. Echols later filed a complaint against the State Attorney alleging, *inter alia*, First Amendment retaliation. *Id.* The district court found that Echols failed to state a claim for First Amendment retaliation, and that the State Attorney

enjoyed qualified immunity because Echols's complaint failed to allege the violation of a right that was clearly established when the State Attorney sent his letter. *Id.*

On appeal, the Eleventh Circuit initially disagreed with the district court, finding that Echols stated a claim for defamation under Georgia law, and that the First Amendment did not protect the defamatory speech. *Id.* at 1320-23. The Eleventh Circuit noted that "[a]fter a plaintiff engages in protected speech, an official may retaliate with physical or economic harm, but he may also retaliate with injurious speech." *Id.* at 1322. It stated that when deciding whether defamation in a particular case is retaliatory, courts should "apply the same test of ordinary firmness as they would for any other claim of retaliation." *Id.* at 1322-23. It then found that the State Attorney's speech would have deterred a person of ordinary firmness from exercising his rights under the First Amendment. *Id.* at 1323. Thus, the Eleventh Circuit held that Echols had stated a First Amendment retaliation claim. *Id.*

However, the Eleventh Circuit further found that the State Attorney did not violate a First Amendment right that was clearly established. *Id.* at 1323-25. It found that there was no controlling precedent clearly establishing the State Attorney's conduct as a constitutional violation, and that the conduct did not so obviously violate the Constitution that prior case law was unnecessary. *Id.* at 1324-25. Additionally—and directly relevant to Plaintiff's argument here—it rejected Echols's argument that the broader, clearly established principle that retaliating against a citizen for exercising his constitutional rights applied to defamation claims. *Id.* The court explained:

> "[S]ome broad statements of principle in case law [that] are not tied to particularized facts ... can clearly establish law applicable in the future to different sets of detailed facts." *Vinyard v. Wilson*, 311 F.3d 1340, 1351 (11th Cir. 2002). But the principle must establish with "obvious clarity" that "in the light of pre-existing law the unlawfulness [of the official's conduct is] apparent." *Id.* at 1353. True, "it is 'settled law' that the government may not retaliate against citizens for the

41

exercise of First Amendment rights." *Bennett,* 423 F.3d at 1256. But that general principle does not resolve with "obvious clarity" that defamation may constitute retaliation in violation of the First Amendment. *See also Reichle v. Howards*, 566 U.S. 658, 665 (2012) (rejecting the argument that "the general right to be free from retaliation for one's speech" clearly establishes a violation of the First Amendment). *Id*. at 1324-25.

Consequently, the Eleventh Circuit held that the State Attorney lacked fair notice that his defamatory statements violated the Constitution, and therefore he enjoyed qualified immunity from Echols's First Amendment retaliation claim.

Here, too, Plaintiff relies on the broad principle that government officials cannot retaliate against citizens for exercising their First Amendment rights. Pursuant to *Echols*, this broad principle does not apply to claims of (or resembling) defamation. *Id*. (holding that the "general principle does not resolve with 'obvious clarity' that defamation may constitute retaliation in violation of the First Amendment"). Therefore, the undersigned  finds that prior to *Echols*, the alleged retaliatory conduct alleged in Counts 2 and 3 was not a violation of clearly established law. As such, Gretsas enjoys qualified immunity as to any alleged retaliatory speech that pre-dates the January 25, 2019 *Echols* decision.

The question, then, is whether the *Echols* decision was sufficient to provide Gretsas fair notice that the retaliatory conduct alleged in Counts 2 and 3 violated the Constitution, such that he does not enjoy qualified immunity for any alleged retaliatory conduct that occurred after January 25, 2019—the date on which the Eleventh Circuit decided *Echols*.

Gretsas argues that "the allegations in the instant case do not resemble the allegations made in *Echols*" such that "'every reasonable official would have understood' at the time of the challenged conduct that Gretsas's actions violated the First Amendment[.]" Mot. at 19-20 (quoting *al-Kidd*, 563 U.S. at 741).

42

As she did regarding Count 1, Plaintiff argues that the broader, clearly established principle that government officials cannot retaliate against citizens for exercising their First Amendment rights controls. Resp. at 20-21. However, as previously discussed, the Eleventh Circuit in *Echols* rejected that argument as it applies to claims of (or resembling) defamation. 913 F.3d at 1324-25.

The undersigned finds that the allegations in *Echols* are not sufficiently analogous to the allegations in this case such that they provided Gretsas with fair notice that his conduct violated the Constitution. As set forth above, the conduct in *Echols* is far more egregious and was a direct threat to the plaintiff, who was affected by the conduct as it happened, and, as the Eleventh Circuit found, the plaintiff, unlike Plaintiff in this case, had pled a claim of defamation. In this case, on the other hand, Plaintiff was not even aware the allegedly defamatory or threatening conduct was happening or whether she had suffered any consequences of the conduct until at least a year later. Given the lack of similarity between the facts of the cases, the undersigned finds that even after the *Echols* decision, Gretsas was not on fair notice that his conduct may have violated Plaintiff's Constitutional rights. As such, Gretsas is entitled to qualified immunity as to Counts 2 and 3.

Accordingly, the undersigned recommends that the Motion to Dismiss should be granted as to Counts 2 and 3.

### D. Count 4: Violation of Plaintiff's Civil Rights By The City

In Count 4 of the SAC, Plaintiff alleges the City violated her Constitutional rights through Gretsas, their alleged "final policy maker" through "the gathering, creation, and continued publishing of the false misleading information concerning misconduct by Plaintiff[.]" SAC at ¶ 18.

43

In order to hold a municipality liable for a Section 1983 claim, a plaintiff must establish the municipality's direct liability. The principle was laid out in *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). In *Monell*, the Court held that a municipality cannot be held liable under Section 1983 on a respondeat superior theory. Thus, a plaintiff must demonstrate a municipality's direct liability under Section 1983. To do so, a plaintiff must "identify either (1) an officially promulgated [city] policy or (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker for the [city]." *Grech v. Clayton Cnty.*, 335 F.3d 1326, 1329 (11th Cir. 2003). However, "[b]ecause a [city] rarely will have an officially-adopted policy of permitting a particular constitutional violation, most plaintiffs . . . must show that the [city] has a custom or practice of permitting it and that the [city]'s custom or practice is the moving force behind the constitutional violation. *Id.* at 1330 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (internal quotation marks omitted)). Accordingly, a city's liability under Section 1983 attaches when a plaintiff shows "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004) (citing *City of Canton*, 489 U.S. at 388). Such claims are commonly referred to as "*Monell* claims."

The City argues that Plaintiff fails to state a *Monell* claim because she fails to plead (1) that there is an underlying constitutional violation in Count 4, as Gretsas's decisions about who he spoke to and what he spoke to them about are discretionary and do not amount to a municipal policy, and (2) that Gretsas's speech amounted to a threat, coercion, or intimidation. Mot. at 20-22. The City also argues that (1) Plaintiff cannot set forth a final policymaker claim under *Monell* because Gretsas's conduct does not rise to the level of an

official City custom or policy, (2) Plaintiff cannot allege a Monell claim based on a purported unofficial pattern or practice because such claim cannot be based solely on his own alleged violations of his constitutional rights, and (3) any claim against the City based on retaliatory activity involving Plaintiff's termination in 2013 is time-barred. Mot. at 23-25.

In response, Plaintiff argues that the SAC alleges constitutional violations as described above in Counts 1-3 against Gretsas. Resp. at 23-24. Plaintiff also argues that, as the City's final policymaker, a single unconstitutional action by Gretsas is sufficient to establish municipal liability, and Plaintiff need not allege the City had a well-established custom and practice with the force of law where the conduct at issue is that of the City's final policymaker. *Id.* at 24. In addition, Plaintiff argues that Gretsas was the City's final policymaker with respect to "the collection, writing up, perpetuation, and publication of information concerning Plaintiff" because Gretsas was the Chief Administrative Officer of the City pursuant to the City's municipal code. *Id.* at 27-29. Further, Plaintiff argues that Gretsas's retaliatory policy and animus were the motivating factors behind his unconstitutional violations. *Id.*

The undersigned agrees that Plaintiff's *Monell* claim against the City fails and must be dismissed. As discussed above, Plaintiff fails to establish that Gretsas violated Plaintiff's constitutional rights as alleged in Counts 1-3 of the SAC. As Plaintiff's *Monell* claim in Count 4 against the City is predicated on Gretsas's alleged violations of Plaintiff's constitutional rights as set forth in Counts 1-3, Plaintiff's *Monell* claim necessarily fails. *McDowell,* 392 F.3d at 1289.

Accordingly, the undersigned recommends that the Motion to Dismiss be granted as to Count 4 of the SAC.

### E. Dismissal With Prejudice

Due to the fact that Plaintiff failed to comply with the Court's directive that she comply with Federal Rules of Civil Procedure 8(a) and 10(b) (ECF No. 40 at 5), and because Defendant Gretsas is entitled to qualified immunity, the undersigned recommends that the SAC be dismissed with prejudice. *See Fernau v. Beauty Prods., Inc.*, 847 F. App'x 612, 615, 623 (11th Cir. 2021) (affirming dismissal with prejudice of second amended complaint after district court warned the plaintiffs that if they were unable to adequately plead their claims in a second amended complaint, the court would be inclined to grant a motion to dismiss with prejudice).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned respectfully recommends that Defendants' Joint Motion to Dismiss Plaintiff's Second Amended Complaint [ECF No. 45] be **GRANTED WITH PREJUDICE.**

The parties will have fourteen (14) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Marcia G. Cooke, United States District Judge. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in the Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at Miami, Florida this 8th day of August, 2022.

_____

MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE

cc:    The Honorable Marcia G. Cooke
       Counsel of Record